Annetta Louise GIBSON,
Petitioner-Respondent,

v.

Max Hall GIBSON,
Respondent-Appellant.

No. WD 35859.

Missouri Court of Appeals,
Western District.

March 5, 1985.

Joseph Y. DeCuyper, Donnie R. Davis, DeCuyper & Lee, Kansas City, for respondent-appellant.

Daniel M. Czamanske, Riverside, for petitioner-respondent.

Before TURNAGE, C.J., and SOMERVILLE and LOWENSTEIN, JJ.

TURNAGE, Chief Judge.

Annetta Gibson brought suit for specific performance of a property settlement agreement entered into with her former husband, Max Gibson. The court ordered Max to perform, and also ordered Max to pay attorney fees and costs.

Max contends that the court altered the parties' agreement; that Annetta pleaded an agreement different in terms from the one she sought to enforce; that the trial court lacked venue; that Annetta had an adequate remedy at law; and that Max should not have been assessed attorney fees and costs. Affirmed.

Prior to the dissolution of their marriage, Annetta and Max entered into a property settlement and separation agreement. By that agreement, Max agreed to pay Annetta contractual maintenance of $2,000 per month until 1987, and thereafter $1,800 per month until the year 2000. The agreement provided that the payments would continue in the event of Max's death, and to guarantee this, the agreement further provided that Max was to establish an insurance trust to be funded by decreasing term insurance in the amount of $200,000. These provisions of the property settlement agreement were incorporated into the dissolution decree. After the dissolution, the parties agreed that the insurance trust would be funded by whole life insurance policies in the amount of $180,000.

Pursuant to their agreement, Max executed an insurance trust in February of 1981. Annetta was satisfied with the trust agreement, except for the provision that Max retained the right to borrow, pledge, or use the cash value of the insurance policies placed in the trust. Annetta filed suit to require Max to perform the property settlement agreement, and alleged that to perform that agreement, the trust provision allowing Max to borrow, pledge, or use the cash value of the policies would have to be deleted. The court agreed and entered judgment ordering Max to remove that provision from the trust.

■ Max first contends that by requiring him to remove the provision in question, the court created a new agreement. The property settlement agreement provided for term insurance, which does not build cash value, but the parties later agreed that whole life policies, which do build cash value, could be substituted. Max thus ar-

gues that the property settlement agreement, as modified, contained nothing that would disallow Max the right to use the cash value of the policies.

Max's argument wholly misses the mark. The provision inserted by Max could at least partially defeat the trust purpose because Max could use the cash value as it accumulated and thus impair the security afforded by the insurance policies to pay maintenance in the event of his death before the year 2000. The court did not make a new agreement for the parties when it required Max to delete the provision in question, but in fact enforced the parties' agreement that Annetta have security in the form of life insurance policies.

Max next contends that Annetta sought to enforce an agreement different from the one she pleaded. Annetta's petition alleged that the cash value provision could limit the amount of cash available to pay maintenance if Max died. That is the agreement Annetta pleaded and sought to enforce, and it is the same agreement the court enforced by its judgment. The court's decision to disallow Max the right to invade the security he agreed to provide simply enforced his agreement to provide security.

■ Max next contends that the Circuit Court of Platte County had no jurisdiction to entertain this specific performance action because venue was properly in Clay County, where Max resided. The property settlement agreement provided that the court in which the dissolution of marriage action was brought would retain jurisdiction for the purpose of interpreting and enforcing the terms of the separation agreement. The dissolution of marriage action was brought in Platte County, and that court entered the dissolution judgment. Annetta's petition was an action to enforce the terms of the separation agreement and the dissolution judgment by requiring Max to execute a trust which would not allow him to impair the security he had promised to provide. In *State ex rel. Marlo v. Hess*, 669 S.W.2d 291, 294[6, 7] (Mo. App.1984), the court held that an action

may be entertained in a circuit court having jurisdiction of the subject matter when the parties have contractually agreed to waive the personal privilege of venue and where such provision is neither unfair or unreasonable. Here, the parties contractually agreed that the jurisdiction of actions to enforce the agreement would be in Platte County. They thereby waived the personal privilege of venue, and agreed that this action would be cognizable in the Circuit Court of Platte County. No circumstances exist which make that agreement unfair or unreasonable. Therefore, the Circuit Court of Platte County had jurisdiction to entertain this action.

■ Max next contends that Annetta was not entitled to specific performance because she had an adequate remedy at law through the filing of a claim against Max's estate if Max should die. To defeat the jurisdiction of equity to decree specific performance, the remedy at law must be as plain, adequate, complete, and efficient as the remedy of specific performance. *Snip v. City of Lamar*, 239 Mo.App. 824, 201 S.W.2d 790, 798[10] (1947) (quoting 49 Am. Jur. *Specific Performance* § 11).

■ It can hardly be said that the remedy of filing a claim against an estate with its attendant uncertainties is as plain, adequate, complete, and efficient as requiring Max to abide by the terms of their agreement. It is obvious that the uncertain fate of a claim against an estate would not be an adequate remedy to defeat the remedy of specific performance.

■ Max finally contends that the court erred in awarding Annetta attorney fees and costs for the prosecution of the specific performance suit. The agreement provided that each party would indemnify the other for all litigation expenses, including reasonable attorney fees, incurred by either party because of the failure of the other party to carry out the terms of the agreement. Max contends he should not be required to pay Annetta's attorney fees and costs in bringing the specific performance suit because he had fully performed

the parties' agreement. For the reasons stated, Max did not perform his agreement, and the court was correct in ordering him to delete the provision in question from the trust agreement. Attorney fees may be awarded to a successful litigant when provided for by contract. *Porter v. Hawks Nest, Inc.*, 659 S.W.2d 786, 789[6, 7] (Mo. App.1983). Annetta is the successful litigant and under the agreement is entitled to her attorney fees and costs.

The judgment is affirmed.

All concur.